Floyd E. WHITLOCK, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1280S445.

Supreme Court of Indiana.

Oct. 19, 1981.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Floyd E. Whitlock, was convicted by a jury of robbery, a class B felony, Ind.Code § 35–42–5–1 (Burns 1979 Repl.) and found to be an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was sentenced to consecutive terms of ten and thirty years with the Indiana Department of Corrections. In his direct appeal, defendant presents the following issues for our review:

1. Whether the trial court erred when it refused to suppress a witness's in-court

identification of defendant on the basis it was tainted by an unduly suggestive "show-up" immediately after the crime;

2. Whether the evidence was sufficient to support his conviction for robbery; and

3. Whether defendant's constitutional rights were violated by the bifurcated trial accorded defendant by virtue of the habitual offender allegation.

The record reveals at approximately 2:00 p. m. on October 9, 1979, the Standard Del-Farm grocery store located in the 2300 block of Lafayette Road in Indianapolis was robbed at gunpoint. Assistant head cashier Susan Hopkins, the only cashier on duty at the time, described the perpetrator to police immediately after the incident as a black male approximately 27 to 29 years of age, about 5'8" tall and of slender build, weighing approximately 160 pounds. In addition, she indicated the perpetrator had worn a dark silky shirt, dark trousers, and a light-colored hat with a dark band around it. She described the weapon as a silver plated or chrome handgun. The "get away" car, which store manager Bill Bolton said carried three occupants, was described as a "small vehicle, orange in color," believed to be a "Mercury Capri" model.

The information was immediately relayed to the Indianapolis Police Control Center and in turn broadcast to all patrol cars in the area of the crime. At approximately 2:45 p. m. Police Officer Rynard Bauer, who was patrolling the west side of Indianapolis, observed an orange 1972 Mercury Capri automobile with three occupants proceeding down West Washington Street. With assistance from other patrolmen, Bauer stopped the vehicle, which was driven by defendant. A handgun and hat matching that attributed to the perpetrator were found in the back seat of the automobile.

Other police officers then escorted cashier Hopkins to the street corner where the Capri was stopped. There, she identified defendant as the man who had robbed the Del-Farm grocery store. Both Hopkins and Bauer made in-court identifications of defendant at trial.

I.

Prior to trial, defendant moved to suppress any in-court identification by eyewitness Hopkins on the basis that the "show-up" confrontation between the two shortly after the crime was unnecessarily suggestive and gave rise to a substantial likelihood of irreparable misidentification. The motion to suppress was denied and, over defendant's objection, Hopkins was permitted to identify defendant at trial. Defendant maintains the trial court erred in permitting Hopkins to identify him at trial.

In support of his contention, defendant focuses on the circumstances surrounding the confrontation between himself and Hopkins. As defendant asserts, the record reveals that when Hopkins was brought to the street corner where defendant had been apprehended, he was one of two black males who were wearing handcuffs and were flanked by police officers. These facts, together with the location and lapse of time, as well as the fact Hopkins had been advised she was going to view a "suspect," rendered the circumstances improperly suggestive of guilt, he argues. Relying on *Stovall v. Denno* (1967) 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, and *United States v. Wade* (1967) 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and the case progeny thereof, he argues the in-court identification was a product of the unnecessarily suggestive confrontation and consequently denied him due process of law.

Confrontations between eyewitnesses and suspects immediately after the commission of a crime are permitted for the reason that it is valuable to have witnesses view a suspect while the image of the offender is fresh in their minds. *Rogers v. State* (1979) Ind., 396 N.E.2d 348; *Williams v. State* (1979) Ind., 395 N.E.2d 239; *McPhearson v. State* (1969) 253 Ind. 254, 253 N.E.2d 226. Whether any particular one-on-one confrontation is unduly suggestive is dependent upon the circumstances in which it is conducted. *See Williams v. State, supra,* and cases cited therein. While factors of suggestiveness were present here,

the circumstances present were not so unduly suggestive as to render Hopkins's subsequent in-court identification improper. *Sims v. State* (1980) Ind., 413 N.E.2d 556; *Williams v. State, supra; Poindexter v. State* (1978) 268 Ind. 167, 374 N.E.2d 509. The trial court did not err in overruling defendant's motion to suppress.

 Even if it could be said the circumstances were unnecessarily suggestive, an "independent basis" existed for Hopkins's in-court identification which would have warranted its admission. *Williams v. State, supra; Poindexter v. State, supra.* Hopkins had the opportunity to view the perpetrator in the grocery store for a period of five minutes. Both daylight and store lighting provided her with a clear look at the perpetrator, who stood as close as one foot away from her during the course of the robbery. This ample opportunity for her to view the perpetrator resulted in the detailed description she gave police. There was no error in the admission of defendant's in-court identification. *Id.*

### II.

Defendant next contends the evidence was insufficient to establish he was the person who took the money from the grocery store cash registers. His contention is predicated in part on his argument heretofore rejected that Hopkins's in-court identification of him should have been suppressed. In addition, he maintains there is no evidence to show he was the person who actually took the money from the cash register tills.

It is true there is no direct evidence or eyewitness testimony that defendant took the money from the cash register tills. Hopkins testified that after the perpetrator pointed a gun at her, she handed him the tills and ran to a room at the back of the store. Immediately after the perpetrator left the store, manager Bill Bolton, who had been in the back room of the store, found the tills lying open and empty.

The standard of review incumbent upon this Court in our review of circumstantial evidence requires us to examine those inferences which support the finding of the jury. *Cummings v. State* (1979) Ind., 384 N.E.2d 605; *Poindexter v. State, supra.* The readily-apparent inference which arises from the testimony of Hopkins and Bolton is that defendant was the person who took the money from the tills. The evidence was sufficient to support the robbery conviction.

### III.

Defendant contends the bifurcated trial procedure and sentencing under the habitual offender statute violated various constitutional guarantees. He argues that the fact the same jury who found him guilty of robbery also adjudged the habitual offender count denied him his presumption of innocence, deprived him of a "fair and impartial" jury, and exposed him to double jeopardy.

Defendant failed, however, to object to the bifurcated procedure at trial. Only the double jeopardy claim was raised in his motion to correct errors. The allegations of error consequently have been waived. Ind. R.Tr.P. 59; Ind.R.Ap.P. 8.3(A)(7); *Guardiola v. State* (1978) 268 Ind. 404, 375 N.E.2d 1105. In addition, we note defendant's arguments have recently been rejected by this Court. *Wise v. State* (1980) Ind., 400 N.E.2d 114; *Jameison v. State* (1978) 268 Ind. 599, 377 N.E.2d 404. *See also, Lawrence v. State* (1972) 259 Ind. 306, 286 N.E.2d 830.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., concurs in result.