**Basil L. TURPIN, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 481S106.

Supreme Court of Indiana.

May 13, 1982.

Jerome L. Withered, Deputy Public Defender for Tippecanoe County, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Dan S. LaRue, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Basil L. Turpin, was found guilty by a jury of burglary, a class C felony, Ind.Code § 35–43–2–1 (Burns 1979 Repl.), theft, a class D felony, Ind.Code § 35–43–4–2 (Burns 1979 Repl.), and of being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1981 Supp.). He was sentenced to concurrent terms of five and two years on the first two counts and a consecutive term of thirty years on the habitual offender count. This direct appeal raises the following issues:

1. Whether the trial court committed fundamental error in submitting the habitual offender charge to the jury at the same time the underlying felony charges were submitted;

2. Whether there was sufficient evidence presented to sustain the verdict on the habitual offender charge;

3. Whether the trial court erred in quashing defendant's subpoena to produce certain records involving one of the state's witnesses; and

4. Whether there was sufficient evidence to sustain the convictions for burglary and theft.

A summary of the facts from the record most favorable to the state shows that a Lafayette police officer had discovered a broken window in the Kirby Risk Building at about 2:07 a. m. on February 13, 1980, and suspected that there had been a burglary. The owner of the building was called and the building was opened. Property which was discovered missing included power tools, screw drivers, a knife and some Texas Instrument calculators. The cigarette machine had been broken into and cigarettes and the coin box were missing. One employee's green sweatshirt was missing and another employee's black quilted jacket was missing.

The police investigated the area near the Kirby Risk Building and discovered three boxes from the Kirby Risk Company stacked in an alley about a block away. They established a stakeout to see if anyone would return to pick up the boxes. Around 5:00 a. m., the defendant was seen walking toward the alley carrying a sack. When he came out of the alley without the sack, he was arrested and given his *Miranda* rights. The sack which he had been carrying was found stacked on top of the other boxes and contained liquor bottles. When the police searched defendant, they found he had a knife similar to knives sold by Kirby Risk and was wearing a brown vinyl

jacket, a green sweatshirt and a black quilted jacket. The sweatshirt and black jacket were later identified by Kirby Risk employees as their clothing that had been left at the Kirby Risk Building the day before the burglary. The boxes stacked in the alley were marked with the name and address of the Kirby Risk Company and contained power tools, calculators, cigarettes, and other items. The serial numbers of five of these calculators matched serial numbers of calculators belonging to the Kirby Risk Company. Later police laboratory tests showed that a residue on defendant's brown jacket was similar to a putty compound which had been used on the broken window two days before the burglary.

Defendant testified in his own defense that on February 12, 1980, he had been traveling by bus from Swiss City, Indiana, to Lafayette, Indiana. He arrived in Lafayette around 6:30 p. m., had supper and went to a movie. He then went to a poker game where he won about $100 and bought a knife and a black jacket from one of the poker players. Defendant also testified that he returned to the bus station around 4:30 a. m., but found that it was closed. He walked into an alley to relieve himself and finish some whiskey he had. When he walked out of the alley, he was arrested by police officers. During his testimony, defendant admitted to having several prior convictions for burglary and theft.

## I.

Defendant first contends that the trial court committed fundamental error in submitting the habitual offender count to the jury along with the underlying felony charges of burglary and theft. The trial court found that defendant had waived his right to a bifurcated proceeding by testifying as to his prior convictions in his case in chief and gave the following final instruction, C–18, which reads in part as follows:

"The provision for a separate trial of the habitual offender question is intended to protect the defendant from possible consideration by the jury of his prior convictions, as bearing upon his guilt or innocence of the subject charges.

"In this case, evidence concerning prior unrelated felonies was introduced by the defendant in the trial upon the Burglary and Theft charges, and, therefore, the habitual offender question is being submitted to you, together with the question of defendant's guilt on the separate felony charges."

Defendant made no objection to this instruction.

 It is clearly established that our habitual offender statute, Ind.Code § 35–50–2–8, *supra*, seeks to provide a fair procedure by which an individual convicted of a felony may receive an enhanced sentence. The bifurcated nature of the proceeding has been determined to be necessary by this Court in order to guarantee the accused's right to a fair trial on the underlying felony charge. *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830.

In the instant case, defendant himself first brought out the existence of his prior convictions during his case in chief. No mention of the habitual criminal charge was made to the jury at the beginning of the trial on the substantive counts. After the state had presented its evidence, defendant took the stand in order to present his alibi defense. During his testimony, he admitted to several prior felony convictions. He stated that he had never had a trial before since he knew he was guilty of the other crimes and had accordingly pled guilty. This apparently was part of his strategy in establishing his credibility. At the conclusion of the case, the trial court decided to submit the habitual offender charge to the jury at the same time as the substantive charges, concluding that defendant had waived his right to a bifurcated proceeding. Defendant made no objections to this procedure.

 Ordinarily, an individual has the freedom to waive rights provided for his benefit. However, the mandatory provisions of our statute cannot be ignored and a finding of waiver is inapplicable under the circumstances of this case. The statute which provides for a determination that an

individual is an habitual offender also provides for a bifurcated procedure to be used in this determination. There is no discretion reposed in the trial court to depart from the demands of this statute. Ind.Code § 35–50–2–8, *supra*. Under our law, defendant was entitled to a bifurcated trial and the failure to follow this procedure in this case was error.

We have recently decided that a defendant may be retried on an habitual offender count in front of a new jury impaneled for that purpose following a declaration of a mistrial during the first habitual offender proceeding. *Funk v. State*, (1981) Ind., 427 N.E.2d 1081; *State v. McMillan*, (1980) Ind., 409 N.E.2d 612. We therefore remand this case to the trial court for a retrial on the habitual offender count.

## II.

Defendant next contends that there was insufficient evidence to sustain the conviction on the habitual offender count. Because we are remanding this case for a new trial on this count, we do not have to reach this issue. We will discuss defendant's remaining two issues, as they deal with allegations of error during the trial on the underlying felony charges.

## III.

Defendant contends that the trial court erred in quashing his subpoena *duces tecum* to produce certain records involving investigations concerning a Lafayette police officer, Donald Johnson, who was one of the state's key witnesses. Defendant asserts that this action denied him the ability to effectively cross-examine Johnson.

The decision to enforce, modify, or quash a subpoena *duces tecum* is a question for the trial court and will not be disturbed unless the decision is clearly arbitrary. *Newton v. Yates*, (1976) 170 Ind.App. 486, 353 N.E.2d 485. Here, defendant has made no showing of how the desired documents were relevant to his trial. The documents were internal police investigative reports which contained information about poten-

tial misconduct of certain police officers. It is well settled that a witness may not be impeached by proof of particular extraneous acts of misconduct, which are not reduced to convictions. *Swan v. State*, (1978) 268 Ind. 317, 375 N.E.2d 198. We have specifically held that it is proper to prohibit, by means of motions *in limine*, any reference to a pending investigation of misconduct on the part of police officers who testified for the state. *Banks v. State*, (1976) 265 Ind. 71, 351 N.E.2d 4.

The documents in the instant case did not contain evidence of any specific convictions and could not have been used for impeachment purposes. Defendant has not shown how these documents were in any other way relevant to his trial. There was no abuse of discretion in the quashing of the subpoena *duces tecum*.

## IV.

Defendant finally contends that the evidence was insufficient to support his convictions for burglary and theft. We have firmly established that in reviewing the sufficiency of the evidence we do not weigh the evidence or judge credibility. We consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Wofford v. State*, (1979) Ind., 394 N.E.2d 100; *Poindexter v. State*, (1978) 268 Ind. 167, 374 N.E.2d 509. The triers of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based upon circumstantial evidence. *Harris v. State*, (1981) Ind., 425 N.E.2d 112. On review, this Court does not have to find that circumstantial evidence is adequate to overcome every reasonable hypothesis of innocence but only that an inference may reasonably be drawn therefrom which supports the findings of the jury. *Hall v. State*, (1980) Ind., 405 N.E.2d 530.

The record in the instant case shows that a window had been broken out of a com-

mercial building and various items were discovered to be missing, including a leather jacket and a sweatshirt. Defendant was arrested in an alley near the location where boxes containing the stolen property had been hidden. He was seen going into this alley three hours after the burglary had been discovered and he placed additional property on top of the boxes containing the stolen property. When he was arrested, defendant was wearing both the missing jacket and sweatshirt. He was carrying a new knife of the same type as one which had been stolen. His own jacket, which he was also wearing, had a residue on the sleeve matching the type of window putty which had been recently used on the broken window.

The unexplained possession of property recently stolen during a burglary will support an inference of guilt. *Goodpaster v. State*, (1980) Ind., 402 N.E.2d 1239. The necessary intent to commit a felony may be inferred from the time, force and manner of entry. *Lisenko v. State*, (1976) 265 Ind. 488, 355 N.E.2d 841. The residue on Turpin's coat, his unexplained possession of stolen property shortly after the crime was discovered, and his presence in the alley at the location where more stolen property was found are circumstances which are sufficient to support the convictions for burglary and theft in this case.

We finally note that we find no harm to defendant on the underlying felony convictions because of the trial court's joint submission of the underlying felony counts and the habitual offender count. The jury was fully aware of the prior convictions before the trial court mentioned the habitual offender count since defendant had voluntarily admitted his prior convictions during his case in chief.

This cause is remanded to the trial court for a new trial on the habitual offender count. The judgment of the trial court should otherwise in all things be affirmed.

Affirmed in part and remanded with instructions.

GIVAN, C. J., and DeBRULER and PIVARNIK, JJ., concur.

PRENTICE, J., dissents with opinion.

PRENTICE, Justice dissenting.

I dissent to the majority's disposition of Issues I and II.

I.

In *Lawrence v. State*, (1972) 259 Ind. 306, 312–13, 286 N.E.2d 830, 833–34, we adopted the bifurcated proceeding, later codified in Ind.Code § 35–50–2–8, in order to prevent the evidence of Defendant's prior convictions, which relates only to the sentence, from unduly influencing the jurors' determination of guilt or innocence of the principal charge. Thus, for purposes of Ind.Code § 35–50–2–8 the mention of prior convictions during the trial of the principal charge taints, if anything, that proceeding and not the subsequent determination of habitual offender status. Much of the majority's language in Issue I recognizes this principle, and the majority accedes that the trial court's failure to bifurcate *sua sponte* was error. Nevertheless, the remand is limited to a re-trial of the habitual offender charge, apparently because *Funk v. State*, (1981) Ind., 427 N.E.2d 1081 and *State v. McMillan*, (1980) Ind., 409 N.E.2d 612, *cert. denied*, (1981) 450 U.S. 1003, 101 S.Ct. 1714, 68 L.Ed.2d 207 authorize such a re-trial.

Those decisions, which allow a re-trial of the habitual offender charge, following the declaration of a mistrial on the habitual offender count proceeding, are irrelevant. Defendant's testimony about his prior convictions and the State's cross-examination thereon was available to the jury, for its consideration, as it deliberated the charges of Burglary and Theft. Presentation of evidence of Defendant's prior convictions created the potential for prejudice to the defense of the Burglary and Theft charges, which the bifurcation is designed to prevent.

I am not inclined to agree that the parties may not, with the consent of the Court, waive bifurcation. However, if the majority is correct in its ruling to the contrary,

then the convictions for Burglary and Theft were had in circumstances which the statute was designed to prevent and were violative of Due Process. In that event, they should be reversed and the case remanded for a new trial. The majority's disposition results in an anomaly unsupported by the purpose for separating the trial of the habitual offender charge from the trial of the principal charge.

## II.

Based upon the record made by the parties, I vote to affirm the convictions for Burglary and Theft, to reverse the finding of habitual offender status, and to remand the case for re-sentencing in accord with this opinion.

The majority notes that Defendant did not object to Final Instruction C–18. The State also failed to object to this instruction, which put the issue of the habitual offender charge before the jury. It seems, from the parties' inaction, that both were satisfied to submit the habitual offender charge to the jury—Defendant confident that the evidence of habitual offender status was insufficient and the State equally confident that Defendant's admission of several prior felony convictions would persuade the jury. By failing to object to Final Instruction C–18, the State forfeited, we assume for tactical reasons, the opportunity to present additional evidence in support of the habitual offender charge during an habitual offender proceeding.

To sustain a sentence under the Habitual Offender Statute, Ind.Code § 35–50–2–8 (Burns 1979), the State must show that the defendant has been previously *twice convicted* and *twice sentenced* for felonies, that the commission of the second offense was subsequent to his having been sentenced upon the first and that the commission of the principal offense upon which the enhanced punishment is being sought was subsequent to his having been sentenced upon the second conviction. *Miller v. State*, (1981) Ind., 417 N.E.2d 339, 342.

In cases such as this, the defendant, who testifies in his own defense, may choose for tactical reasons to admit the prior convictions on direct examination, as occurred here, *see Smith v. State*, (1981) Ind., 422 N.E.2d 1179, 1187, or he may have them exposed by the Prosecutor, as proper impeachment on cross-examination as also occurred here. *Jameison v. State*, (1978) 268 Ind. 599, 603, 377 N.E.2d 404, 406–07. *See Gilmore v. State*, (1981) Ind., 415 N.E.2d 70, 73; *Williams v. State*, (1981) Ind., 419 N.E.2d 134, 137. However, the mere admission of prior convictions was not evidence that he had been sentenced upon them. The record herein reveals but one sentencing.

The Habitual Offender count of the information charged the following prior felonies:

1. June 18, 1969—Owen Circuit Court, conspiracy first degree burglary, 2–14 years at the Indiana Reformatory.

2. May 13, 1977—LaPorte Superior Court, theft, one year at the Indiana State Farm.

3. April 17, 1979—Montgomery Circuit Court, theft, two years at the Indiana State Farm.

4. April 15, 1975—Lawrence Superior Court, second degree burglary, 2–5 years at the Indiana Reception and Diagnostic Center.

5. August 18, 1972—Greene Circuit Court, carrying a pistol without a permit, one year at the Indiana Reception and Diagnostic Center.

The only evidence concerning the charged prior felonies came during the testimony of Defendant. On direct examination, he admitted a 1969 conviction for Burglary and Theft in Florida, which was not relevant to the habitual offender count as it was not charged. He also admitted guilty pleas to conspiracy to commit burglary in 1969, second degree burglary in 1975, and theft in 1977, 1978, and 1979. On cross-examination the Prosecutor interrogated concerning the convictions that Defendant had mentioned on direct examination and also extracted an admission as to 1972 conviction for carrying a pistol. Defendant also volunteered that

he had been convicted in Kentucky in 1978 for two counts of theft, neither of which had been charged.

There is without doubt ample evidence for the jury to have found that Defendant suffered numerous prior felony convictions; however, the statute requires that the State also show the imposition of sentences upon at least two of the five charged prior felony convictions. The only evidence of sentencing on any of the charged prior felonies also came from the defendant's testimony and provided, at best, a weak inference, which relates, again at best, only to the charged 1979 Theft conviction. On direct examination Defendant testified as follows:

"Q. Okay. Basil, you remember Friday, February the 8th, 1980?

"A. Yes, sir.

"Q. Just got off the Farm, didn't you?

"A. Yes, I did.

"Q. Okay. And, how'd you feel at that time?

"A. Pretty good. Fairly happy about it, you know. I done about nine months there, too, so ——

"Q. Did you want to go back?

"A. No, sir." (R. at 626)

Defendant then related the remainder of his alibi defense, which included that he had used a bus ticket to go from the Farm to Indianapolis, rather than to Crawfordsville, the destination printed on the ticket.

The record is devoid of any evidence from which it can be reasonably inferred that the defendant has ever been sentenced upon any of the charged prior felony convictions other than the one in 1979. There is no evidence to weigh and no credibility to determine; and upon this state of the record, the finding that Defendant is an habitual offender cannot stand.

The State submitted a charge of habitual offender to the jury upon a record which does not contain sufficient evidence to sustain it. The majority, in effect, sanctions a re-trial, a second opportunity for the State to repair a hole in its case by submitting evidence that it could have presented at the first trial. Such a re-trial violates the Double Jeopardy provisions of the State and Federal Constitutions. *Hudson v. Louisiana*, (1981) 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (cases cited therein); *Webster v. State*, (1980) Ind., 413 N.E.2d 898, 902 (Prentice, J., concurring and dissenting).

I concur in Issues III and IV of the majority opinion and therefore vote to affirm the convictions for Burglary and Theft; but for the reasons expressed above, the habitual offender finding should be reversed and the case remanded with instructions to vacate the verdict upon the habitual offender count and to re-sentence the defendant.