Tadeusz DYLAK, Appellant,

v.

STATE of Indiana, Appellee.

No. 43A04–0503–CR–150.

Court of Appeals of Indiana.

April 11, 2006.

Publication Ordered June 6, 2006.

Transfer Denied Aug. 31, 2006.

Mark A. Bates, Schererville, for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Judge.

Tadeusz Dylak appeals his conviction for reckless homicide as a class C felony.[1]

Dylak raises four issues, which we revise and restate as:

I.     Whether the trial court abused its discretion by quashing Dylak's subpoena duces tecum;

II.    Whether the trial court properly excluded a portion of testimony from Dylak's expert witness;

III.   Whether the evidence is sufficient to sustain Dylak's conviction;

IV.   Whether the trial court abused its discretion in sentencing Dylak; and

V.    Whether Dylak's sentence is inappropriate.

We affirm.

The facts most favorable to the conviction follow. This case involves a collision that occurred between a semi truck driven by Dylak and a pickup truck driven by Douglas Raber on May 13, 2003. During a period of eight days, a semi truck driver cannot exceed seventy hours of on duty time ("seventy hour rule"). A semi truck driver may only drive ten hours and then must not work for eight hours ("ten hour rule"). In the eight days preceding May 13, 2003, Dylak, a semi truck driver, violated the seventy hour rule by driving approximately 71.5 hours at the time of the collision. On May 7th, 8th, and 12th, Dylak also violated the ten hour rule.

On May 13, 2003, Dylak was traveling eastbound on U.S. 30 near Warsaw at approximately 10:15 p.m. A vehicle traveling eastbound on U.S. 30 would pass yellow caution lights at 200 West with a sign that reads "Congested area next 6 miles." *Id.* at 155. A vehicle traveling eastbound would also encounter three traffic lights before U.S. 30 intersects with Center Street. The posted speed limit on U.S. 30 was forty-five miles per hour.

---

1. Ind.Code § 35–42–1–5 (2004).

Carol Forester was stopped at a red light in the right northbound lane behind her uncle's vehicle on Center Street at the well-lit intersection of U.S. 30 and Center Street. Chris Clark was also stopped at the red light in the southbound lanes of Center Street. A gray pickup driven by Raber was in the left northbound turn lane waiting to turn west on U.S. 30.

Dylak was about a hundred yards away from the light at the intersection of U.S. 30 and Center Street when the signal governing eastbound traffic on U.S. 30 turned yellow. The light stayed yellow for 4.3 seconds. Once the traffic signal controlling U.S. 30 turned red, all traffic lights at the intersection were red for 0.9 seconds before the traffic signal controlling Center Street turned green. When the light controlling traffic on Center Street changed to green, Clark "sat there for a second then proceeded across" the intersection. Transcript at 100. Clark crossed into the eastbound lanes on U.S. 30. When the light turned green, Forester's uncle paused briefly and then entered the intersection. Forester proceeded northbound and followed her uncle's vehicle into the intersection. Raber entered the intersection to turn left onto U.S. 30.

The light was red when Dylak reached the light. Dylak did not blow his horn as he entered the intersection. Dylak, who was traveling approximately forty miles per hour, swerved and barely missed Clark's vehicle. Dylak struck the pickup truck driven by Raber. Raber's pickup truck then collided with Forester's vehicle. The collision occurred 11.04 seconds after the traffic signal controlling eastbound traffic on U.S. 30 turned yellow. After the collision, Dylak told officers that he was "tired" and that he was "going to rest." Transcript at 119. Raber later died of his injuries.

The State charged Dylak with reckless homicide as a class C felony. Prior to trial, Dylak filed a request for production, which asked the Sheriff of Kosciusko County for:

All records of automobile collisions at the intersection of U.S. highway 30 and Center Street, Warsaw, Kosciusko county, Indiana, during the three year period prior to the filing of this request, including but not limited to, names of individuals involved in the accidents (if no formal report was made), legal action, if any taken by the sheriff's department, any accident investigation and/or reconstruction information related to such collision, total number of collisions reported at the above intersection, and the names of any departments who investigated any of the above requested matters, if not done by the sheriff's department, and for any other reports or information related to such collisions currently in the possession of the Kosciusko county sheriff's department.

Appellant's Appendix at 123. The State moved to quash Dylak's subpoena duces tecum because the information sought was frivolous and irrelevant and the burden to comply with the subpoena was excessive in light of any possible probative value. The trial court held a hearing on the State's motion and subsequently granted the motion to quash.

At trial, Dylak's attorney asked David Sallmann, Dylak's expert witness:

You've given us several different terms that we're not familiar with but obviously you've used them all in generating an opinion as to this accident. If you were to give an opinion since it is not speed as to what caused the accident, what would you use, using your calculations, the evidence presented to you by the State, the new information we've received through testimony, what do you believe actually

caused the collision to occur if it's not speed and it's not the brakes?

Transcript at 261. The State objected, and the trial court sustained the objection. *Id.* Dylak did not make an offer of proof.

The jury found Dylak guilty of reckless homicide as a class C felony. On February 17, 2005, at sentencing, the trial court found the following mitigators: (1) Dylak had been a law abiding citizen; and (2) imprisonment would result in hardship to Dylak's family. The trial court stated, "And I do not find aggravating circumstances, but a sentence less than the presumptive sentence would depreciate the seriousness of the crime." Transcript at 329. The trial court sentenced Dylak to the presumptive sentence of four years.

## I.

The first issue is whether the trial court abused its discretion by quashing Dylak's subpoena duces tecum. "The decision to enforce, modify, or quash a subpoena duces tecum is a question for the trial court and will not be disturbed unless the decision is clearly arbitrary." *Turpin v. State*, 435 N.E.2d 1, 4 (Ind.1982). Decisions regarding discovery matters, including rulings on discovery violations, are within the broad discretion of the trial court as part of its inherent power to guide and control the proceedings. *Norris v. State*, 516 N.E.2d 1068, 1070 (Ind.1987). We may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even reasons not enunciated by the trial court. *Williams v. State*, 819 N.E.2d 381, 384–385 (Ind.Ct.App.2004), *trans. denied.* "Due to the fact-sensitive nature of discovery matters, the ruling of the trial court is cloaked in a strong presumption of correctness on appeal." *Pioneer Lumber, Inc. v. Bartels*, 673 N.E.2d 12, 15 (Ind.Ct. App.1996), *trans. denied.*

In criminal cases, to determine if information sought is properly discoverable:

(1) there must be a sufficient designation of the items sought to be discovered (particularity); (2) the items requested must be material to the defense (relevance); and (3) if the particularity and materiality requirements are met, the trial court must grant the request unless there is a showing of paramount interest in non-disclosure.

*In re WTHR–TV*, 693 N.E.2d 1, 6 (Ind. 1998) (internal quotation omitted). "An item is 'material' if it appears that it might benefit the preparation of the defendant's case." *Id.* at 7. The term "paramount interest:"

suggests that some fundamental and important stake is required to resist discovery. However, the depth of the interest in resisting may be no more than inconvenience if the need for it from a given source is minimal—for example, because it is readily available elsewhere without need to drag third parties into court. Whether a sufficient interest has been shown to prevent discovery will depend upon the type of interest put forth and the category of information sought. A legitimate interest in keeping the information or items confidential, for example, may suffice to deny discovery. Ultimately these factors [i.e., particularity, relevance, and paramount interest in non-disclosure] involve a balancing test that includes evaluation of the relevance of the material, its availability from other sources, the burden of compliance measured in terms of difficulty, and the nature and importance of any interests invaded.

*Id.* at 7–8 (citations and quotation marks omitted).

A subpoena must be sufficiently limited in scope, relevant in purpose, and

specific in directive so that compliance will not be unreasonably burdensome. *Oman v. State*, 737 N.E.2d 1131, 1139 (Ind.2000), *reh'g denied, cert. denied*, 534 U.S. 814, 122 S.Ct. 38, 151 L.Ed.2d 12 (2001). A court may "quash or modify the subpoena if it is unreasonable and oppressive." Ind. Crim. Rule 2(1); Ind. Trial Rule 45(B).

■■■■ Dylak argues that the subpoena was relevant in purpose, sufficiently limited in scope, and specific in directive.[2] The trial court held a hearing on the State's motion to quash the subpoena. At the hearing, Dylak's attorney stated, "Our goal is to look at that to see the investigation to see whether there is any information regarding the traffic lights, traffic patterns that would be consistent or which would be different than those that were given by the State's expert Sergeant Shuter." Transcript at 8–9. The State argued that meeting Dylak's request would be "very time consuming" but not "impossible to produce." *Id.* at 9. The State argued that the information would be irrelevant because Dylak had not been involved in an accident at the intersection before May 13, 2003. *Id.* The State also argued that the subpoena should be "redirected to the appropriate agencies" rather than the Sheriff of Kosciusko County and "[a]ctually the agencies would be the Warsaw Police Department because it is in the Warsaw jurisdiction as well as the Indiana State Police." *Id.* at 10. The trial court took the motion under advisement and granted the State's motion to quash without explanation. The record does not reveal that Dylak sought to subpoena the Warsaw Police Department or the Indiana State Police.

The record does not reveal that Dylak addressed the State's argument by seeking to subpoena to the appropriate agencies, i.e. the Warsaw Police Department or the Indiana State Police, rather than the Sheriff of Kosciusko County. Under the circumstances, we cannot say that the trial court's decision was clearly arbitrary. *See, e.g., Turpin v. State*, 435 N.E.2d 1, 4 (Ind. 1982) (holding trial court did not abuse its discretion by quashing defendant's subpoena duces tecum because); *Davis v. State*, 529 N.E.2d 112, 115 (Ind.Ct.App.1988) (holding that testimony would not have been material and relevant and noting that the trial court did not quash defendant's subpoena on a whim because it held a hearing).

## II.

■■■■ The next issue is whether the trial court properly excluded a portion of testimony from Dylak's expert witness. At trial, Dylak's attorney asked Sallmann, Dylak's expert witness:

You've given us several different terms that we're not familiar with but obviously you've used them all in generating an opinion as to this accident. If you were to give an opinion since it is not speed as to what caused the accident, what would you use, using your calculations, the evidence presented to you by the State, the new information we've received through testimony, what do you believe actually caused the collision to occur if it's not speed and it's not the brakes?

Transcript at 261. The State objected and stated, "Rule 704 indicates this witness cannot testify as to legal conclusions or matters of intent or causation that's con-

---

**2.** Dylak also argues that the State did not have standing to object to his subpoenas because the State lacked a personal stake in the outcome. The State argues that Dylak waived this argument by failing to challenge the State's standing at trial. We agree. "An issue cannot be raised for the first time on appeal." *McClendon v. State*, 671 N.E.2d 486, 489 (Ind.Ct.App.1996).

tained in Rule 704(b)." *Id.* After a bench conference, the trial court sustained the objection. Dylak argues that the trial court erred by not allowing the defense expert to state what he thought caused the collision. However, upon the trial court's sustaining of the State's objection, Dylak failed to make an offer of proof in accordance with Ind. Evidence Rule 103.[3] "An offer of proof allows the trial and appellate courts to determine the admissibility of the testimony and the potential for prejudice if it is excluded." *Dowdell v. State*, 720 N.E.2d 1146, 1150 (Ind.1999). "It is well settled that an offer of proof is required to preserve an error in the exclusion of a witness' testimony." *Id.* Accordingly, Dylak has waived review of this issue on appeal. *See, e.g., Id.* at 1150 (holding that defendant's failure to make an offer of proof waives any error in the exclusion of witnesses).

### III.

■ The next issue is whether the evidence is sufficient to sustain Dylak's conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

The offense of reckless homicide is governed by Ind.Code § 35–42–1–5, which provides that "[a] person who recklessly kills another human being commits reck-

less homicide, a Class C felony." Ind. Code § 35–41–2–2(c) defines "recklessly" as "conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Thus, to convict Dylak of reckless homicide, the State needed to prove that Dylak killed Raber by engaging in conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involved a substantial deviation from acceptable standards of conduct.

■ In *Whitaker v. State*, 778 N.E.2d 423, 425 (Ind.Ct.App.2002), *trans. denied,* we addressed what evidence is "necessary to sustain a conviction for reckless homicide arising out of a motor vehicle collision." We held:

> [R]elatively slight deviations from the traffic code, even if they technically rise to the level of "reckless driving," do not necessarily support a reckless homicide conviction if someone is subsequently killed. Some gross deviations from the traffic code, however, may under certain circumstances be such a substantial departure from acceptable standards of conduct that they will support a reckless homicide conviction, such as ignoring traffic signals at a high rate of speed, driving on a dark road at night without headlights, or intentionally crossing the centerline without a legitimate reason for doing so.

*Whitaker,* 778 N.E.2d at 426. Further, "[p]roof that an accident arose out of the inadvertence, lack of attention, forgetfulness or thoughtlessness of the driver of a

---

**3.** Ind. Evidence Rule 103 states, in pertinent part, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked."

vehicle, or from an error of judgment on his part, will not support a charge of reckless homicide." *Beeman v. State,* 232 Ind. 683, 690, 115 N.E.2d 919, 922 (1953).

Dylak argues that the evidence is insufficient to sustain his conviction because the State did not prove that he engaged in reckless conduct or that his conduct caused Raber's death. The evidence most favorable to the conviction reveals that Dylak violated the rule that during a period of eight days a driver may not exceed seventy hours of on duty time. During the eight days preceding the collision, Dylak had been driving for approximately 71.5 hours at the time of the collision. On May 7th, 8th, and 12th, Dylak also violated the rule that a driver may only drive ten hours and then must not work for eight hours. The purpose of the seventy hour rule and the ten hour rule is to prevent fatigued drivers from driving on the roadways.

Dylak entered the well-lit intersection of U.S. 30 and Center Street. Dylak had enough distance to stop. The collision occurred 11.04 seconds after the traffic signal controlling eastbound traffic on U.S. 30 turned yellow. Dylak admitted that he was one hundred yards away from the intersection when the traffic signal turned yellow and that the traffic signal was red when he entered the intersection. Dylak failed to use his horn as he entered the intersection. After the collision, Dylak told officers that he was tired and that he was going to rest. Under the circumstances, the jury could have found that Dylak was substantially deviating from acceptable driving standards.

Dylak's arguments merely amount to an invitation that we reweigh the evidence and the credibility of the witnesses, which we cannot do. *Stewart v. State,* 768 N.E.2d 433, 435 (Ind.2002), *cert. denied,* 537 U.S. 1004, 123 S.Ct. 493, 154 L.Ed.2d 402 (2002). The evidence presented at trial was sufficient to show Dylak recklessly killed Raber. Accordingly, we find that probative evidence exists to support Dylak's conviction for reckless homicide as a class C felony. *See, e.g., Hughes v. State,* 510 N.E.2d 741, 743 (Ind.Ct.App.1987) (holding that the evidence was sufficient to support conviction for reckless homicide where defendant was speeding and disregarded a red traffic light).

## IV.

The next issue is whether the trial court abused its discretion in sentencing Dylak. When a trial court imposes the presumptive sentence, it has no obligation to explain its reasons for doing so. *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind. 1996). However, in this case, the trial court listed aggravating and mitigating circumstances in its sentencing order and, thus, was required to state its reasons for imposing the sentence it did. *Jackson v. State,* 728 N.E.2d 147, 155 (Ind.2000). "This requirement is intended to ensure that the trial court considered proper matters in determining the sentence and facilitates meaningful appellate review of the reasonableness of the sentence." *Id.*

At sentencing, the trial court found the following mitigators: (1) Dylak had been a law abiding citizen; and (2) imprisonment would result in hardship to Dylak's family. The trial court stated, "And I do not find aggravating circumstances, but a sentence less than the presumptive sentence would depreciate the seriousness of the crime." Transcript at 329. The trial court sentenced Dylak to the presumptive sentence of four years. *See* Ind.Code § 35-50-2-6 (2004) (subsequently amended by Pub.L. No. 71-2005, § 9 (emerg. eff. Apr. 25, 2005)).

Dylak's sole argument regarding the aggravators and mitigators is that the trial court failed to find his remorse as

a substantial mitigator. "The finding of mitigating factors is not mandatory and rests within the discretion of the trial court." *O'Neill v. State,* 719 N.E.2d 1243, 1244 (Ind.1999). The trial court is not obligated to accept the defendant's arguments as to what constitutes a mitigating factor. *Gross v. State,* 769 N.E.2d 1136, 1140 (Ind.2002). "Nor is the court required to give the same weight to proffered mitigating factors as the defendant does." *Id.* Further, the trial court is not obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State,* 749 N.E.2d 36, 38 (Ind. 2001), *reh'g denied.* However, the trial court may "not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Id.* An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State,* 711 N.E.2d 835, 838 (Ind.1999).

■■■■ A trial court's determination of a defendant's remorse is similar to a determination of credibility. *Pickens v. State,* 767 N.E.2d 530, 534–535 (Ind.2002). Without evidence of some impermissible consideration by the court, we accept its determination of credibility. *Id.* The trial court is in the best position to judge the sincerity of a defendant's remorseful statements. *Stout v. State,* 834 N.E.2d 707 (Ind.Ct.App. 2005), *trans. denied.* Dylak does not allege any impermissible considerations. The trial court did not abuse its discretion by failing to consider Dylak's alleged remorse to be a mitigating factor. *See, e.g., id.* (holding that the trial court did not err in refusing to find defendant's alleged remorse to be a mitigating factor).

## V.

■■■ The next issue is whether Dylak's sentence is inappropriate. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Dylak requests that we order a suspended term or probation rather than the presumptive sentence imposed by the trial court.

Our review of the nature of the offense reveals Dylak violated the seventy hour rule and the ten hour rule, which are in place to prevent fatigued drivers from entering the roadways. Dylak saw the yellow light within enough distance to stop. However, Dylak drove on, disregarded the red light, entered the intersection, failed to blow his horn, and collided with Raber. As a result, Raber died and his skin and hair ended up in the front grille of Dylak's semi truck.

Our review of the character of the offender reveals that Dylak falsified his log book regarding an inspection in Pennsylvania. After the collision, Dylak told officers that he was "tired" and he was "going to rest." Transcript at 119. Dylak does not have a criminal record and imprisonment would result in a hardship to Dylak's family.

After due consideration of the trial court's decision, we cannot say that the presumptive sentence is inappropriate in light of the nature of the offense and the character of the offender. *See, e.g., Ray v. State,* 838 N.E.2d 480, 495 (Ind.Ct.App. 2005) (holding that presumptive sentence was not inappropriate even when defendant had no previous record), *trans. denied.*

For the foregoing reasons, we affirm Dylak's conviction for reckless homicide as a class C felony.

Affirmed.

RILEY and BARNES, JJ., concur.

### ORDER

The Appellant, by counsel, has filed a Petition for Publication. Appellant states that in response to his argument concerning the sufficiency of the evidence, this Court determined, in part, that Appellant's violation of the seventy-hour rule and ten-hour rule pertaining to truck drivers, supported the finding that Appellant's behavior gave rise to the reckless homicide finding. And, because there are thousands of truck drivers who travel throughout Indiana, this appears to involve a legal or factual issue of unique interest or substantial public importance. Therefore, Appellant requests an order from the Court to publish the opinion for this cause.

Having reviewed the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. Appellant's Petition for Publication is GRANTED, and this Court's opinion handed down on April 11, 2006, marked Memorandum Decision, Not for Publication, is now ORDERED PUBLISHED.

SHARPNACK, RILEY and BARNES, JJ., concur.